# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Christine Mouser, Individually, and on behalf of all others similarly situated, | Case No. _____ |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| vs. | **DEMAND FOR JURY TRIAL** |
| imToken Pte. Ltd. | |
| Defendant. | |

## CLASS ACTION COMPLAINT

Now comes Plaintiff, Christine Mouser, ("Plaintiff"), on behalf of herself and all other similarly situated, through Counsel, and pursuant to 735 ILCS §§ 5/2-801 and 2-802, and 740 ILCS § 740/14/1 *et. seq.,* against Defendant imToken Pte. Ltd. ("imToken" or "Defendant"), its subsidiaries and affiliates, to redress and curtail Defendant's unlawful collections, obtainments, use, storage, and disclosure of Plaintiff's sensitive and proprietary biometric identifiers and/or biometric information (collectively referred to herein as "biometric data" and/or "biometrics"). Plaintiff alleges as follows upon personal knowledge as to herself, her own acts and experiences and, as to all other matters, upon information and belief including investigation conducted by her attorneys.

## NATURE OF THE ACTION

1. imToken is a website and mobile phone application owned and operated by imToken Pte. Ltd. which markets itself as a crypto currency exchange. *See* https://token.im/?locale=en-us (last visited Aug. 19, 2024).

2. Plaintiff opened an account on imToken within the five (5) years immediately

1

preceding the filing of this Complaint.

3. As part of signing up, and/or gaining access to her imToken account, Plaintiff was prompted to allow imToken to collect her facial geometry, *i.e.,* her biometric information in order to verify her identity and ensure that she can meet the standards required by imToken in order to have access to the application.

4. The process prompts users to upload personal information including their name, address, a photo of a government issued ID, and a photo of their face i.e. a "selfie".

5. imToken invites users to sign up for "Touch ID/ Face ID" in order to assure quick payments and verification when conducting cryptocurrency transactions on their platform. *See* https://token.im/tos-en.html (last visited Aug. 19, 2024).

6. The data sets collected during these processes are known as facial geometry scans.

7. Facial geometry scans are unique, permanent biometric identifiers associated with each user that cannot be changed or replaced if stolen or compromised. imToken's collection obtainment, storage, storage, and use of its users' biometric database containing facial geometry scans or other sensitive, proprietary biometric data is hacked, breached, or otherwise exposed, imToken users have no means by which to prevent identity theft, unauthorized tracking or other unlawful or improper use of this highly personal and private information.
users' biometric data.

8. The Illinois legislature enacted BIPA to protect residents' privacy interests in their biometric data. *See Heard v. Becton, Dickinson & Co*., 440 F. Supp. 3d 960, 963 (N.D. Ill. 2020), citing *Rosenbach v. Six Flags Entm't Corp.*, 2019 IL 123186, 432 Ill. Dec. 654, 129 N.E.3d 1197, 1199 (2019).

9. Courts analogize an individual's privacy interest in their unique biometric data to

their interest in protecting their private domain from invasion, such as from trespass. *See Bryant v. Compass Group USA, Inc.*, 958 F.3d 617, 624 (7th Cir. 2020), as amended on denial of reh'g and reh'g en banc, (June 30, 2020) and opinion amended on denial of reh'g en banc, 2020 U.S. App. LEXIS 20468, 2020 WL 6534581 (7th Cir. 2020).

10. In recognition of these concerns over the security of individuals' biometrics – particularly in the City of Chicago, which has been selected by major national corporations as a "pilot testing site[] for new applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias" (740 ILCS 14/5(b)) – the Illinois Legislature enacted the BIPA, which provides, inter alia, that a private entity like imToken Pte. Ltd. may not obtain and/or possess an individual's biometrics unless it: (1) informs that person in writing that biometric identifiers or information will be collected or stored; (2) informs that person in writing of the specific purpose and length of term for which such biometric identifiers or biometric information is being collected, stored and used; (3) receives a written release from the person for the collection of her or her biometric identifiers or information; and (4) publishes publicly-available written retention schedules and guidelines for permanently destroying biometric identifiers and biometric information. 740 ILCS 14/15(a)-(b).

11. The Illinois Legislature has found that "[b]iometrics are unlike other unique identifiers that are used to access finances or other sensitive information." 740 ILCS 14/5(c). "For example, social security numbers, when compromised, can be changed. Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions." *Id.*

12. imToken is a "private entity" as that term is broadly defined by BIPA and is subject

to all requirements of BIPA. *See* 740 ILCS § 14/10.

## JURISDICTION AND VENUE

13. This is a Class Action Complaint for violations of the Illinois Biometric Information Privacy Act (740 ILCS § 14/1 *et seq.*) brought pursuant to Fed. R. Civ. P. 23 seeking statutory and actual damages.

14. This Court has jurisdiction over this dispute pursuant to 28 U.S.C. § 1332 because Plaintiff and the proposed class members are all residents of Illinois, imToken is domiciled internationally, and the amount in controversy exceeds $75,000.

15. This Court has jurisdiction over this dispute pursuant to the Class Action Fairness Act ("CAFA") because the prospective class includes over 100 people and the amount in controversy exceeds $5,000,000.

16. At all relevant times, Plaintiff and the proposed Class are residents of the state of Illinois and the violations of BIPA as detailed herein occurred while Plaintiff and the proposed Class were located in Illinois.

17. imToken is a cryptocurrency exchange which markets itself and does substantial business with users located in and residing within the State of Illinois.

18. imToken markets directly to Illinois residents.

19. imToken's marketing efforts include, but are not limited to, pay-per-click advertising, Facebook ads, Instagram ads, and other social media marketing campaigns targeted specifically at indiviudals residing within the City of Chicago and State of Illinois.

20. imToken's marketing efforts directed towards Illinois were a factor in Plaintiff's decision to open an imToken account.

4

**FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS**

21. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

22. Plaintiff opened an account on imToken within the five years immediately preceding the filing of this matter.

23. As part of signing up, and/or gaining access to her imToken account, imToken collected and retained Plaintiff's biometric information as detailed herein.

24. At all relevant times, imToken had no written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric information when the initial purpose for collecting or obtaining such biometric information has been satisfied or within 3 years of the individual's last interaction with imToken, whichever occurs first.

25. Ostensibly, the purpose of imToken's collection of Plaintiff's facial geometry was to verify Plaintiff's identity prior to allowing Plaintiff to buy or sell goods on the imToken app and/or website.

26. As such, Plaintiff's facial geometry should have been permanently destroyed by imToken following the opening of her imToken account.

27. However, imToken failed to permanently destroy Plaintiff's facial geometry following the opening of Plaintiff's account as detailed herein.

28. As such, imToken's retention of Plaintiff's biometric information was unlawful and in violation of 740 ILCS § 14/15(a).

29. imToken did not inform Plaintiff in writing that imToken was collecting or storing her biometric information. Instead, Plaintiff was simply instructed to scan her facial geometry as part of the overall account opening and verification processes detailed herein.

30. In fact, imToken made no mention of biometric information, collection of biometric information, or storage of biometric information.

31. Moreover, imToken did not inform Plaintiff in writing of the specific purpose and length of term for which her biometric information was being collected, stored, and used.

32. imToken collected, stored, and used Plaintiff's biometric information without ever receiving a written release executed by Plaintiff which would consent to or authorize imToken to do the same.

33. Additionally, imToken disclosed, redisclosed, or otherwise disseminated a Plaintiff's information (1) without Plaintiff's consent; (2) without Plaintiff's authorization to complete a financial transaction requested or authorized by; (3) without being required by State or federal law or municipal ordinance; or (4) without being required pursuant to a valid warrant or subpoena issued by a court of competent jurisdiction.

34. Moreover, imToken disclosed, redisclosed or otherwise disseminated Plaintiff's biometric information to its service providers, contractors, business partners, and collection agencies. *See* https://token.im/tos-en.html (last visited Aug. 19, 2024).

35. imToken's collection and retention of biometric information as described herein is not unique to Plaintiff and is instead part of imToken's policy and procedures which imToken applies to all of its users, including the Class Members.

### RULE 23 CLASS DEFINITIONS AND ALLEGATIONS

36. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

37. Plaintiff brings Claims for Relief in violation of BIPA as a class action under

Rule 23(a), (b)(2) and (b)(3). Plaintiff brings these claims on behalf of herself and all members of the following Rule 23 Class:

> **All Illinois residents who had their biometric information collected by Defendant at any point in the five (5) years preceding the filing of this Complaint.**

38. In the alternative, and for the convenience of this Court and the parties, Plaintiff may seek to certify other subclasses at the time the motion for class certification is filed.

39. **Numerosity (Rule 23(a)(1)).** The Class Members are so numerous that joinder of all members is impracticable. Plaintiff is informed and believes that there are more than 1,000 people who satisfy the definition of the Class.

40. **Existence of Common Questions of Law and Fact(Rule 23(a)(2))**. Common questions of law and fact exist as to Plaintiff and the Class Members including, but not limited to, the following:

   a. Whether imToken possessed Plaintiff's and the Class Members' biometric identifiers or biometric information without first developing a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with imToken, whichever occurs first.

   b. Whether imToken collected, captured, purchased, received through trade, or otherwise obtained Plaintiff's and the Class Members' biometric identifier or biometric information, without first: (1) informing Plaintiff and the Class Members in writing that a biometric identifier or biometric information is being collected or stored; (2) informing Plaintiff and the Class Members in writing of the specific purpose and length of term for which their

7

biometric identifier or biometric information was being collected, stored, and used; and (3) receiving a written release executed by Plaintiff and the Class Members

  c. Whether imToken disclosed, redisclosed, or otherwise disseminated Plaintiff's and the Class Members' biometric identifiers or biometric information (1) without Plaintiff's and the Class Members' consent; (2) without Plaintiff's and the Class Members' authorization to complete a financial transaction requested or authorized by Plaintiff and the Class Members; (3) without being required by State or Federal law or municipal ordinance; or (4) without being required pursuant to a valid warrant or subpoena issued by a court of competent jurisdiction.

  d. The damages sustained and the proper monetary amounts recoverable by Plaintiff and the Class Members.

  41. **Typicality (Rule 23(a)(3)).** Plaintiff's claims are typical of the Class Members' claims. Plaintiff, like the Class Members, had their biometric identifiers and biometric information collected, retained or otherwise possessed by imToken without imToken's adherence to the requirements of BIPA as detailed herein.

  42. **Adequacy (Rule 23(a)(4))**. Plaintiff will fairly and adequately represent and protect the interests of the Class Members. Plaintiff has retained counsel competent and experienced in complex class actions.

  43. **Injunctive and Declaratory Relief (Rule 23(b)(2).** Class certification of the Rule 23 claims is appropriate under Rule 23(b)(2) because imToken acted or refused to act on grounds generally applicable to the Class Members, making appropriate declaratory relief with respect to the Class Members as a whole.

  44. **Predominance and Superiority of Class Action (Rule 23(b)(3)).** Class

certification of the Rule 23 claims is also appropriate under Rule 23(b)(3) because questions of law and fact common to the Class Members predominate over questions affecting only individual members of the classes, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. imToken's common and uniform policies and practices illegally deprived Plaintiff and the Class Members of the privacy protections which BIPA seeks to ensure; thus, making the question of liability and damages much more manageable and efficient to resolve in a class action, compared to hundreds of individual trials. The damages suffered by individual Class Members are small compared to the expense and burden of individual prosecution. In addition, class certification is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about imToken's practices.

45. Plaintiff intends to send notice to all Class Members to the extent required by Fed. R. Civ. P. 23.

## COUNT ONE: VIOLATION OF 740 ILCS § 14/15(a)

46. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

47. A private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first. Absent a valid warrant or subpoena issued by a court of competent jurisdiction, a private entity in possession of biometric identifiers or biometric information must comply with its established retention schedule and destruction guidelines. 740 ILCS § 14/15(a).

48. imToken created and collected biometric templates of the Plaintiff's and the Class Members' faces which qualifies as biometric information as defined by BIPA.

49. At all relevant times, imToken had no written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric information when the initial purpose for collecting or obtaining such biometric information has been satisfied or within 3 years of the individual's last interaction with imToken, whichever occurs first.

50. Ostensibly, the purpose of imToken's collection of Plaintiff's and the Class Members' facial geometry was to verify Plaintiff's and the Class Members' identities prior to allowing them to access the imToken platform.

55. As such, Plaintiff's and the Class Members' facial geometry should have been permanently destroyed by imToken following the opening of the imToken accounts.

56. However, imToken failed to permanently destroy Plaintiff's and the Class Members' facial geometry following the opening of their imToken accounts and instead retained Plaintiff's and the Class Members' biometric information.

56. As such, imToken's retention of Plaintiffs' and the Class Members' biometric information was unlawful and in violation of 740 ILCS § 14/15(a).

**COUNT TWO: VIOLATION OF 740 ILCS § 14/15(b)**

57. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

58. No private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first:

> (1) informs the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored;

10

(2) informs the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

(3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative. 740 ILCS § 14/15(b).

59. imToken did not inform Plaintiff and the Class Members in writing that imToken was collecting or storing her biometric information.

60. Instead, Plaintiff and the Class Members were simply instructed to scan their facial geometry as part of the overall account opening and verification process and this information was then processed by imToken.

61. Moreover, imToken did not inform Plaintiff and the Class Members in writing of the specific purpose and length of term for which their biometric information was being collected, stored, and used.

62. imToken collected, stored, and used Plaintiff's and the Class Members' biometric information without ever receiving a written release executed by Plaintiff or the Class Members which would consent to or authorize imToken to do the same.

63. As such, imToken's collection of Plaintiff's and the Class Members' biometric information was unlawful and in violation of 740 ILCS § 14/15(b).

**COUNT THREE: VIOLATION OF 740 ILCS § 14/15(d)**

64. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

65. No private entity in possession of a biometric identifier or biometric information may disclose, redisclose, or otherwise disseminate a person's or a customer's biometric identifier or biometric information unless:

    (1) the subject of the biometric identifier or biometric information or the subject's legally authorized representative consents to the disclosure or redisclosure;

    (2) the disclosure or redisclosure completes a financial transaction requested or authorized by the subject of the biometric identifier or the biometric information or the subject's legally authorized representative;

    (3) the disclosure or redisclosure is required by State or federal law or municipal ordinance; or

    (4) the disclosure is required pursuant to a valid warrant or subpoena issued by a court of competent jurisdiction. 740 ILCS § 14/15(d).

66.     imToken disclosed, redisclosed or otherwise disseminated Plaintiff's biometric information to its service providers, contractors, business partners, and collection agencies.

67.     imToken's disclosures, redisclosures, or otherwise disseminating of Plaintiff's and the Class Members' biometric information was unlawful and in violation of 740 ILCS § 14/15(d).

**WHEREFORE,** individually, and on behalf of the Class Members, Plaintiff prays for: (1) certification of this case as a class action pursuant to Fed. R. Civ. P. 23 appointing the undersigned counsel as class counsel; (2) a declaration that Defendant has violated BIPA, 740 ILCS § 14/1 et seq.; (3) statutory damages of $5,000.00 for the intentional and reckless violation of BIPA pursuant to 740 ILCS § 14/20(2), or alternatively, statutory damages of $1,000.00 pursuant to 740 ILCS § 14/20(1) in the event the court finds that Defendant's violations of BIPA were negligent; (4) reasonable attorneys' fees and costs and other litigation expense pursuant to 740 ILCS §14/20(3); (5) actual damages; and (6) for any other relief deemed appropriate under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff and the Class members hereby demand a jury trial on all causes of action and claims with respect to which they each have a state and/or federal constitutional right to a jury trial.

Dated: August 28, 2024

Respectfully submitted,

By: */s/ Michael L. Fradin*
Michael L. Fradin, Esq.
8401 Crawford Ave., Ste.104
Skokie, IL 60076
Telephone: 847-986-5889
Facsimile: 847-673-1228
Email: mike@fradinlaw.com

By: */s/ James L. Simon*
James L. Simon (*pro hac vice* forthcoming)
Simon Law Co.
11 ½ N. Franklin Street
Chagrin Falls, Ohio 44022
Telephone: (216) 816-8696
Email: james@simonsayspay.com